Jack (alias Jimmy) Rudolph WOODS,
Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–14199.

Court of Criminal Appeals of Oklahoma.

March 20, 1968.

Rehearing Denied May 24, 1968.

Second Rehearing Denied June 10, 1968.

Red Ivy, Chickasha, for plaintiff in er-
ror.

G. T. Blankenship, Atty. Gen., Hugh H.
Collum, Asst. Atty. Gen., for defendant in
error.

BRETT, Judge.

The plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the district court of Grady County with the crime of grand larceny; was tried before a jury, found guilty, and his punishment fixed at imprisonment in the state penitentiary for a term of one year and ten months. Appeal has been perfected to this Court.

The State, to support the conviction of the defendant, introduced the testimony of five witnesses.

Roy Carman, who signed the complaint before the justice of the peace, was the chief of police of the city of Chickasha on the date of the alleged crime, as well as at the time of the trial. He testified that he received a call from Pratt's Food Store on November 3, 1965 and went there immediately. When he arrived the manager of the store, Owen Ickman, and one Mike Keener, a clerk, had the defendant in charge.

Witness Carman learned that the accused was charged with having taken money from the cash register. He testified that the accused asked him to put him, the accused, under arrest, and take him to the police station. Witness identified the defendant as the man he arrested in the Pratt Food Store on the date named. Chief Carman stated he conducted an investigation, and learned that money was missing from the cash register; that the accused had thrown $57 in bills on the floor of the store, and this had been recovered. Chief Carman stated that he talked with other witnesses who were present in the store at the time the crime was committed.

On cross-examination Chief Carman stated that the manager of the store (Ickman) had the $57, which consisted of five $10 bills, one $5 and two $1 bills. That the bills were in the manager's office. He also stated that he was told that another patron in the store had picked up some of the money from the floor where defendant had thrown it, near the front door. The Chief of Police testified further that Owen Ickman, who was manager of the Pratt Food Store at the time the offense was committed, had died prior to the time of the trial.

Bill Tindell testified that he was a customer in the store at the time of this disturbance, and was behind the defendant at a check-out counter. He testified: "Well he taken, the defendant taken his purchase and started to the door, and I didn't know anything was going on until her husband [Mike Keenan, husband of the checker] grabbed him and he [defendant] threw the money. * * * Mr. Keenan had grabbed him on the overall bib and went outside and they was struggling and got out the door. Mr. Keenan finally got him back in and they got the police there."

Witness Tindell identified the defendant as the man, in the store, who threw money on the floor inside the store. He stated that he did not see the defendant take any money out of the cash register, but saw defendant, "When he slung it back like that", and he saw the money fall when the defendant "threw it back in the store."

Mrs. Harry Sanders was also a customer in the store, and was checking out at one of the two check stands when she noticed the disturbance. This witness testified that the man identified as Mike Keener caught the defendant at the door, that defendant pulled his hand out of his pocket and said, " 'Here, you can have your money, let me go', and the money just went everywhere." She identified the defendant as the man who threw the money on the floor. She stated, "I went over and picked up some money outside and some inside, and I held it up high so that nobody would know that I hadn't taken any of it, and finally the black-headed girl told me to lay it on the blond-headed girl's counter, which I did."

On cross-examination this witness testified that she did not see the defendant take any money from the cash register.

Mrs. Gerri Keener testified that on the date in question she was a checker at Pratt's Foodway. That the defendant, whom she identified, came to her stand with a can of fruit, and asked if they had clothes-pins. While her husband, who was sacking groceries, went to the back of the store to get the clothes-pins, defendant asked her for some snuff, and when she turned around and reached down to get it, she heard a "click" as metal on metal. She looked at the defendant, and he had a handful of money, and she saw him quickly stuff it in his pocket. She saw that the $10 bills were gone from her cash register, and when her husband returned with the clothes-pins, she whispered to him, "The tens are gone". Her husband rang the bell for the manager, and the defendant said, "Check me out, check me out, I am in a hurry", and started to leave. That Mr. Keenan grabbed the defendant, who said, "The lady said I took the money, but I didn't", and reached in his pocket and threw the money on the floor, and went out the door. Mrs. Keener said her husband pulled the defendant back into the store, and detained him until the police arrived.

Mr. Keener testified to about the same facts as did his wife. He also corroborated his wife's testimony that the defendant asked him to check him out, that he was in a hurry, and that defendant stated: "The lady said I took her money. I never, I never", then threw the money down and stated: "Here it is, mister, please let me go, please let me go." Defendant started running out the door, but the witness said he caught and detained him. He testified on cross-examination that the defendant had the money in his pocket, and pulled it out and threw it on the floor.

Defendant did not testify, and offered no evidence.

Defendant, in his brief, sets out three assignments of error.

■ His first contention is that the county attorney committed error in his opening statement to the jury. We have carefully read this statement, and while it is not a model, this court has repeatedly held, as stated by Judge Doyle in the case of Sparkman v. State, 67 Okl.Cr. 245, 93 P.2d 1095 (one of the two Oklahoma cases cited by defendant in support of his contention), ninth paragraph of the syllabus:

"An opening statement is, and purports to be, no more than an outline of the state's theory and the evidence expected to be offered in support. The statement of incompetent or immaterial matter affords no ground for reversal unless it appears that the statement was manifestly prejudicial."

And again, in Akins v. State, 91 Okl.Cr. 47, 215 P.2d 569:

"Ordinarily, error cannot be predicated upon the opening statement of a prosecuting attorney to the jury, specifically stating what facts he expects to develop in testimony, where later, for some reason, he fails to introduce evidence to support some of the narrative related in the opening statement, unless such unsupported portions of the opening statement were made in bad faith and were manifestly prejudicial."

And see also: Lee v. State, 67 Okl.Cr. 283, 94 P.2d 5; Guest v. State, 56 Okl.Cr. 129, 34 P.2d 1082, and numerous other cases.

Defendant then calls attention to the closing argument of the State, wherein the county attorney referred to the testimony of the State as "uncontroverted. They have presented no evidence, not from any witness"; and, "Let me say that again: It is uncontroverted. They have presented no evidence, not from any witness."

In support of his brief, defendant cited two Oklahoma cases, Sparkman v. State, supra, in which the defendant had been convicted of robbery with firearms, and which case was affirmed; and Hilyard v. State, Okl.Cr., 214 P.2d 953, which is also reported in 28 A.L.R.2d 961, with an extensive annotation following. Both of these cases state propositions of law applicable to opening statements, rather than to closing arguments. In the Hilyard case, which was

reversed and remanded for new trial, in the body of the opinion, referring to the opening statement of the county attorney, this Court said:

"The county attorney when he made his opening statement well knew that he could not use the wife of the defendant as a witness, but could only cross-examine her should she voluntarily take the stand as a witness for her husband. If he was just repeating statements that she may have made to him, he knew that he could not offer evidence of such statements. * * * He also knew whether or not he had any witness not under disability who would testify to matters suggested in his opening statement. We must conclude that he could make no such proof, or else he would have done so."

In Bush v. State, 91 Okl.Cr. 30, 215 P.2d 577, we said:

"Defendant contends that the county attorney called to the attention of the jury in his argument to the jury the fact that defendant did not testify in his own behalf, when he stated that 'The evidence of Roy Raines has not been denied or contradicted.' The applicable statute is Tit. 22 O.S.A. § 701. This statute has been in a number of cases construed in connection with similar statements made by prosecuting attorneys in argument to jury, and has been held not to constitute error."

While in light of the many decisions of this Court, we are of the opinion, and so hold in this case, that the remarks of the county attorney in his opening statement and when considered in connection with his closing argument, did not constitute a violation of defendant's rights, and were not erroneous, under the circumstances, in order to again call to the attention of prosecuting attorneys the grave risk they run in trying to comment upon the failure of the defendant to introduce any evidence, we are prone to quote the statement made by this Court in the case of White v. State, 76 Okl.Cr. 147, 134 P.2d 1039:

"The county attorney should have been very careful in his argument not to make a statement which might force the trial court to declare a mistrial. The statute (22 O.S.A. § 701) makes it mandatory on the trial court to grant a new trial when the prosecutor comments on the fact that defendant did not testify. It is taking a great chance for the county attorney to make any statement which might, in any way, prejudice his case, especially where he has made out a good case against the defendant and there appears no reasonable probability that any jury could do other than return a verdict of guilty.

See also: Chapman v. State of California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

Defendant's second proposition of error is that the trial court committed numerous errors of law that occurred during the trial, and which prevented defendant from receiving a fair and impartial trial; and the third proposition is that the verdict is not sustained by sufficient competent evidence, and is contrary to the instructions of the court, and failure of the court to give defendant's requested instruction.

We find no merit in either of these propositions. Defendant does not cite any authorities in support of the propositions, and after careful study of the record, we are of the opinion that defendant received a fair and impartial trial.

While no one testified to having actually seen the defendant take the money from the cash register, the circumstantial evidence is strong and convincing that the money thrown on the grocery store floor by the defendant had been taken from the cash register. This evidence, coupled with Mrs. Keener's knowledge that the ten dollar bills had been in the cash register drawer only a moment earlier, appears to be sufficient to sustain the jury's verdict. As stated in Stumblingbear v. State, Okl.Cr., 364 P.2d 1115:

"Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the de-

fendant guilty, the weight, credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence."

And see: Rogers v. State, 85 Okl.Cr. 116, 185 P.2d 927; La Santa v. State, Okl.Cr., 314 P.2d 917; Bayless v. State, Okl.Cr., 350 P.2d 520.

It is our opinion that the instructions given by the court were sufficient, and that the court did not err in failing to give defendant's requested instruction.

■■■■ The evidence of the State points to the guilt of the defendant, to the exclusion of every other reasonable hypothesis. The errors complained of, in light of the entire record, fall within the provisions of Title 22 Okl.St.Ann. § 1068, which provides:

> "No judgment shall be set aside or new trial granted by any appellate court of this State in any case, * * * on the ground of * * * the improper admission or rejection of evidence, or as to error in any matter of * * * procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

In light of the entire record, and the foregoing authorities, we are convinced that the guilt of the defendant is clear. The verdict fixing punishment at one year and ten months is certainly indicative of the fact that the defendant was not prejudiced as a result of passion engendered by the opening statement and the closing argument.

The judgment and sentence of the District Court of Grady County is affirmed.

BUSSEY, J., concurs.