James Edward Thomas **WHITE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–16315.

Court of Criminal Appeals of Oklahoma.

June 14, 1972.

W. Keith Rapp, Brian Gaskill, Public Defenders for Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for appellee.

## OPINION AND DECISION

BRETT, Judge:

Appellant, James Edward Thomas White, hereafter referred to as defendant, was convicted by a jury in the District Court of Tulsa County on the 9th day of October, 1970, for the crime of first degree manslaughter, and was sentenced to a term of twenty-five years in the Oklahoma State Penitentiary. Judgment and sentence was imposed on the 21st day of October, 1970, after defendant's motion for new trial was overruled.

Prior to the beginning of the trial, but after the jury was selected, an evidentiary hearing was held before the Honorable Robert F. Martin on defendant's motion to suppress, which was overruled. Defendant was seeking to suppress certain signed statements he had given to the Tulsa Police. The court also overruled defendant's "Motion to Produce" the said statements, which had been filed earlier. Exceptions were taken to both of the court's rulings.

The evidence showed that the defendant shot and killed Homer Clarence Coleman, his step-father, on July 4, 1970, at 519 East Latimer Place in Tulsa, Oklahoma. The defense offered was that of self-defense. When the defendant testified, he asserted that he saw his step-father pull his pistol, so he fired his own pistol and killed him. But, he said he did so because he feared he was going to be shot, and because his deceased step-father had said he would also kill his mother, Mrs. Frances Coleman. When Officer Dennis Moore testified, he said he found a gun lying six inches from the deceased man's left arm. Mrs. Coleman testified as a state witness and was also called by the defendant, when she told of her deceased husband's violent capabili-

ties. She related that her deceased husband had thrown a knife at her several times; and that on one occasion he told her how he cut a man's throat when he was in Texas.

Early on the morning following defendant's arrest, at 2:45 A.M., July 5th, Officer Fred Taylor interrogated the defendant, after he properly advised him of his constitutional rights. At the conclusion of that interrogation, the defendant signed a statement which was recorded by Opal Holmes and was witnessed by the interrogating officer. In that statement defendant said that someone else killed his step-father. At 2:45 P.M. on the same day, Officer Harold Harrison interrogated the defendant, after again properly advising him of his constitutional rights. At the conclusion of that interrogation, the defendant signed a second statement, which was recorded by Pat Daley and was witnessed by the interrogating officer and Sergeant Bob Bivins. The second statement constituted a confession, in which defendant admitted shooting and killing his step-father. It was these two signed statements the defendant sought to obtain by his Motion to Produce, in which he asserted that at the time the statements were given he was under the influence of alcohol, was in a highly agitated and nervous state, and that they were necessary for him to prepare an adequate defense.

In his confession the defendant said, in part, the following:

"I was there when Homer Coleman came in between 6:00 and 12:00 A.M. He appeared to be angry with my mother, Frances Coleman. My mother and I had just returned from a barbecue. He threatened my mother. I intervened and began talking to him. He told me if I interfered he would kill me. He left the table, going into the kitchen. He pulled his pistol. I pulled mine and began firing. I walked over and I felt his body. I fired again. I reloaded my pistol. I walked outside and back in again and proceeded packing my suit case. My mother ran out the door and I presumed she called the police. The police arrived. When I saw the police arrive I put my pistol under the mattress in the bedroom."

Officer Raulston testified to finding the pistol under the mattress.

When the defendant testified he said that he did not remember saying anything about going over to the body and firing at his step-father again. He related also that he gave the first statement, in which he denied the shooting, because he didn't want to admit that he killed the man. On cross-examination he testified that he put the pistol in his belt that morning, although the trouble with the deceased did not occur until later that evening.

■ In his brief defendant argues five propositions. The first asserts that the court erred in denying his motion for mistrial, when the prosecutor gave his personal opinion of the defendant's guilt. "[A] prosecuting attorney may state his opinion as to the defendant's guilt when he also states that his opinion is based on the evidence in the case, and where the evidence detailed reasonably tends to support such conclusions." Igo v. State, Okl.Cr., 267 P. 2d 1082, 1100 (1954). As we view the record the prosecutor in the instant case had been discussing the evidence when he made the statement.

■ The second proposition asserts error when the court refused to give defendant's requested instruction number one. "It is not error to refuse requested instructions which have been covered by the general instructions." Leath v. State, Okl.Cr., 398 P.2d 857 (1965). We have reviewed the court's instructions and find that they were sufficient to meet the requirements of the law. "Where the trial court's instructions as a whole present to the jury within the law the theory of the defense in all its legally essential and evidential established phases, the same will be held sufficient to meet the requirements of the law." Lefthand v. State, Okl.Cr., 398 P.2d 98 (1965).

Defendant's third proposition asserts error was committed when the pathologist was permitted to comment on an old wound of the deceased. It is without merit. Defense counsel opened the door for this testimony when he inquired concerning old fractures on the deceased's body. "Counsel for the accused may not invite error in their examination of the states' witnesses and then complain of the error which was made." Logan v. State, 95 Okl.Cr. 76, 239 P.2d 1044 (1952).

For his fourth proposition, defendant contends that the court should have permitted him to use the term "to a moral certainty" during the voir dire of the jury. In support of this proposition he cites Gray v. State, 56 Okl.Cr. 208, 38 P.2d 967 (1934). In that case this Court stated, "The difficulty with this instruction is that the words 'to a reasonable and moral certainty' add nothing to the words 'beyond a reasonable doubt;' one may require explanation as much as the other." In the instant case, such use of the phrase "to a moral certainty" was unnecessary. We therefore deny this proposition.

The crux of defendant's appeal lies in his fifth proposition. He contends it was error when the trial court refused to grant his request for the two statements he gave to the police. We believe he is correct in this proposition, which he supports by citing this Court's decision in Doakes v. District Court of Oklahoma County, Okl. Cr., 447 P.2d 461 (1968). In that decision this Court allowed the petitioner's request for a statement she gave to the police, soon after her arrest when she was in a highly agitated condition; but the request for other statements of her children was denied. After the Doakes decision was rendered, the legislature enacted Title 22 O.S. 1969, § 749, which provides authority for an accused person to be provided a copy of any sworn statement he gives to the district attorney or any police officer.

In the instant case, two of the officers testified that the defendant had been drinking. One considered him to have been under the influence of alcohol, whereas the other officer became engrossed in the "degrees" of intoxication. Nonetheless, when the first statement was given, the defendant was clearly shown to have been under some degree of intoxication, and that he was in a highly agitated condition. In Doakes v. District Court, supra, this Court provided:

"[W]here an accused gives a statement to the police under distressing circumstances without benefit of counsel and is later unable to remember what he said in the statement in order to assist counsel in his defense, substantial justice requires the prosecution to allow the accused or his counsel a pre-trial inspection of such statement."

In the instant case the record reveals that the defendant filed his motion to produce, and his motion to suppress, on October 2, 1970; but the trial court did not consider those motions until after the voir dire of the jury on October 9th, when the evidentiary hearing was had on the motion to suppress. The defendant was entitled to have had both motions disposed of in sufficient time for him to seek relief in this Court; but because both motions were considered when the trial was ready to commence, he was precluded from seeking other relief. The trial court committed error when defendant's Motion to Produce the two statements was denied.

However, under the facts and circumstances surrounding this conviction, that error standing alone is not sufficient to cause a reversal of this conviction. Defendant did commit the alleged homicide, while claiming self-defense; but the jury did not accept that contention and found him guilty of first degree manslaughter.

We are therefore of the opinion that the ends of justice will be better served by giving the defendant the benefit of the error and modifying the judgment and sentence to ten (10) years imprisonment, and as modified affirming the same.

It is so ordered.

BUSSEY, P. J., and SIMMS, J., concur.