**Mike McCALL, Appellant,**
**v.**
**The STATE of Oklahoma, Appellee.**
**No. F–74–646.**

Court of Criminal Appeals of Oklahoma.

Feb. 14, 1975.

Rehearing Denied Sept. 5, 1975.

John W. Taber, Chandler, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

OPINION

PER CURIAM:

Appellant, Mike McCall, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Lincoln County, Case No. CRF–73–128, for the offense of Unlawful Delivery of Marihuana, in violation of 63 O.S.1971, § 2–401(A). The jury fixed his punishment at two (2) years' imprisonment and a fine of Ten ($10.00) dollars and from this judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness at trial was Gregory Scott Butler. He testified that on the 10th day of December, 1973, he was employed as an undercover police officer by the Stroud, Oklahoma, Police Department. He stated that on the evening of the 9th day of December and in the early morning hours of the 10th day of December, 1973, he had an occasion to meet the defendant, Mike McCall. At this time he made an in court identification of the defendant. He further testified that he had known who the defendant was for approximately two weeks prior to that day, but that he had only met him on one or two occasions previously. He further stated that in the early morning hours of December 10, 1973, he, Jerry Nance and Randy Nicolet went to an apartment in Stroud, Oklahoma, occupied by Terry Sallee and Sammy Barela. He said that upon arriving at the apartment the Sallee girl was there along with the defendant and Allen McCall. He testified that while in the apartment he overheard the defendant offer to sell a lid of marihuana to Nance and Nicolet, which offer they rejected. He further testified that later when Allen McCall and defendant got up to leave the apartment, he, Butler, engaged the defendant in a conversation. He further stated that at that time he asked the defendant if he could buy the lid of marihuana from him, to which the defendant agreed. He testified that the meeting was arranged for 6:30 p. m. of that day on Main Street in Stroud. He further stated that at approximately 6:15 p. m. of that day he flagged the defendant down and then followed him out of town some two or three miles on a dirt road where the defendant stopped his car. He testified that then the defendant went to his trunk, opened it and pulled out a plastic baggie containing a green, leafy substance and handed it to him. He stated that he gave the defendant a ten dollar bill in return. He further testified that he kept the marihuana in his coat pocket until approximately 11:20 p. m. the same evening when he met with Chief Keys of the Stroud Police Department at which time the lid of marihuana was properly sealed and marked in a Crime Bureau evidence bag and given to Chief Keys. On cross-examination he testified that he had worked over a period of three and a half years for various police departments in the role of an undercover police officer. He stated that during most investigations, in order to effect the role of an undercover officer, he had to smoke marihuana. He further stated that his law enforcement work in the role of an undercover officer had led to several criminal convictions, both felony and misdemeanor. He further testified that subsequent to the purchase from the defendant of marihuana on the 10th day of December, he had further contact with him on one occasion and that the defendant told him that marihuana could be purchased from a person who worked on the rock crusher at Cushing. He further testified that he pursued this lead and was effective in making a purchase of marihuana from said individual. He further stated that neither before nor after the one pur-

chase from the defendant on December 10, had he ever heard anything of the defendant's involvement with drugs. He lastly testified that there were approximately six cases filed as a result of his undercover work in Stroud, Oklahoma.

Claude Keys testified that he was employed by the City of Stroud as Chief of Police and had been for about one year. He further stated that on or about the 2nd day of November, 1973, he hired Gregory Butler for the purpose of working as an undercover police officer in the narcotics area. He testified that on the evening of December 10, 1973, he received a call from Officer Butler and that at approximately 11:30 p. m. on that evening he met with Butler on a country road outside of Stroud. He further testified that at that time Butler turned over to him what had been marked as State's Exhibit No. 1 at trial, an envelope containing a green, leafy substance. He testified that he initialed the envelope, sealed it and took it to the Oklahoma State Bureau of Investigation for analysis.

William J. Caveny testified that he was employed by the Oklahoma State Bureau of Investigation in Oklahoma City as a forensic chemist and had been for approximately four years. At this point the qualifications as an expert chemist were stipulated to by both parties. The witness was then shown State Exhibit No. 1 and he testified that he received the same on or about the 18th day of December, 1973, and that thereafter he performed a chemical analysis on the contents of the envelope, and that it was his expert opinion that it contained marihuana.

The State then rested.

The first witness for the defense was Robert Sands. After giving his name and address, he invoked his privilege to remain silent under Fifth Amendment.

The defendant then called three character witnesses, Everett Lee Webb, Jack Cook and Mildred Bickrey, all of whom testified that the defendant's reputation for truth and honesty in the community was good.

Archaleen McCall Harrington testified that she had been married to Harvey McCall, now deceased, and that he was the father of the McCall children. She further testified that Mike McCall was born in Stroud and had lived there all his life.

The defense then rested.

Defendant's first proposition asserts that as a matter of law, the defendant was entrapped by undercover Officer Butler and that the trial court should have sustained his demurrer to the State's evidence. This Court clearly expressed what is or what is not entrapment in the case of *In Re Patton*, Okl.Cr., 382 P.2d 28 (1963), wherein this Court stated in quoting from 22 C.J.S. Criminal Law § 45(2), p. 138:

"One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of 'entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent."

See also, *Riddle v. State*, Okl.Cr., 374 P.2d 634 (1962) and *Bradley v. State*, Okl.Cr., 485 P.2d 767 (1971).

In the instant case, the evidence shows that the crime originated in the mind of the defendant as illustrated in the record wherein the undercover Officer Butler's testimony is that he personally heard the defendant offer to sell marihuana to Nicolet and Nance and that thereafter only then did he ask the defendant if he could purchase a lid of marihuana.

Thus, we find the defendant had the intent to commit the offense and the officer only furnished the opportunity for the commission thereof. Under these facts entrapment clearly is not present. See, *Welling v. State,* Okl.Cr., 509 P.2d 489 (1973).

■ The defendant's second proposition of error asserts that the prosecuting attorney's closing argument was highly prejudicial and contained numerous inadmissible comments which inflamed the jury. In support of this proposition the defendant first contends that the prosecuting attorney in his closing argument made the statement to the effect that the evidence produced by the State was "uncontroverted." In the instant case the defendant did not testify, nor did he offer any evidence in his behalf other than that given by character witnesses. This Court specifically discussed the use of the word "uncontradicted" in *Spears v. State,* 97 Okl.Cr. 249, 261 P.2d 464 (1953) and we feel that said discussion is applicable in the case at bar wherein the prosecutor used the word "uncontroverted."

We stated in the fourth paragraph of the syllabus in *Spears v. State, supra,* that:

"Where a defendant fails to offer any evidence, the prosecutor is not prevented from discussing the evidence against him and to state that such evidence is uncontradicted. Such argument would not be a violation of the statute forbidding comment on the fact that defendant did not testify."

See also, *Woods v. State,* Okl.Cr., 440 P.2d 994 (1968) and *Story v. State,* Okl.Cr., 478 P.2d 929 (1971). We, therefore, are of the opinion that the prosecutor made proper comments upon the inferences reasonably to be drawn from a failure to controvert the State's evidence. We therefore find this contention to be without merit.

■ In further support of this proposition of error, defendant argues that the prosecutor committed reversible error in the closing argument when the following statements were made:

"MR. CRAIG: [I] go back once again to the same basic premise. Either he is guilty of what we've charged him with here beyond any reasonable doubt, or you just can't believe what Mr. Butler told you from the witness stand up here. To me, it just has to be one or the other. It can't be any other way. And his credibility. The fact that he has worked as an undercover agent in other places, he condemns him and damns him for this. I say Thank God we've got some people who'll do these things." (Tr. 14)

and also,

"MR. CRAIG: [H]e says why weren't Mr. Nance and Mr. Nicolet here? They told you they were users. I asked Mr. Butler if they weren't users over there in the community, and he said yes, they were. And they have the same opportunity to call them as we do." (Tr. 16)

After an examination of the entire record we find that no objection was made to these remarks, nor was the court requested to admonish the jury to disregard them with an exception taken to the ruling of the court. It is a well established rule that when an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with the request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in motion for new trial. When this is not done, the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error. *Neal v. State,* Okl.Cr., 506 P.2d 936 (1973). Notwithstanding this rule, we are of the opinion that the remarks made by the prosecutor in the latter instance were provoked and invited by defense counsel where, during his closing argument, he stated:

"Now, I ask you, where are Gary Nance and Randy Nicolet? If this was so,

why didn't the State come in and verify that?" (Tr. 8)

Thus, the statement, when viewed in context, more than not, invited the rebuttal remark of the prosecutor now alleged as error. In *Robison v. State,* Okl.Cr., 430 P.2d 814 (1967) this Court held in the third paragraph of the syllabus that:

"If counsel wishes to preserve in the record alleged errors committed during the closing argument of the State, he should request that all of the arguments for the State and defendant be transcribed and when objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done the matter cannot be presented for the first time in the Motion for New Trial and in the Petition-in-Error and briefs on appeal."

Thus, after a review of the record we find that the defendant failed to object to the alleged improper remarks by the prosecutor when made, and further we find that there was no request to the trial court that the jury be instructed to disregard such improper statements and therefore these contentions cannot be raised for the first time as error on appeal. Therefore, we find this contention of defendant to be without merit.

For the reasons above set forth, we are of the opinion that the defendant had a fair trial, free of any error which would justify modification or reversal, and that the punishment imposed was well within the range provided by law.

The judgment and sentence appealed from is, accordingly, affirmed.