Reginald L. GREEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–351.

Court of Criminal Appeals of Oklahoma.

Sept. 23, 1975.

Ralph T. Hood, Jr., Guthrie, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Reginald L. Green, hereinafter referred to as defendant, was charged, tried and convicted, along with co-defendant Milton Clark Dangerfield, in the District Court of Logan County, CRF–74–33, for the offense of Robbery by Fear after Former Conviction. His punishment was fixed at a term of ten years in the State Penitentiary, in accordance with the jury's verdict. From that conviction, a timely appeal has been perfected to this Court.

At the trial, the following facts were developed. On June 26, 1974, at approximately 9:45 a. m., two Negro males entered White's Midwest Jewelers in Guthrie, Oklahoma. The only person in the store at that time was Mrs. Velma Hogan, the store manager. One of the men, identified at time of trial as defendant, began removing jewelry from display cases and the window. The other man, identified at trial as defendant Dangerfield, indicated to Mrs. Hogan that he had a gun under his shirt, and told her to cooperate or she would be killed. Mrs. Hogan stated that these two men had been in the store about 5:30 p. m. the evening before, June 25, 1974. A few moments later, a third Negro male entered the store carrying a red suitcase. The jewelry was placed in the suitcase and the three men left the store, entered a green sedan which had been parked in front of the store for thirty to forty-five minutes, and proceeded west. Bob Ward, a Guthrie attorney passing by at the time the men left, testified that the green automobile turned south at the first corner west of the store.

When the police arrived, they were told the store had been robbed by three Negro males, all above average in height. The individual later identified at trial as defendant Dangerfield was described by Mrs. Hogan as being taller than the other men, wearing a cap and a sport shirt that buttoned up the front, and having a beard and a mustache. The individual later identi-

fied as defendant was described as being tall, lighter in complexion than Dangerfield, wearing a floppy hat and having a mustache. The third individual was also described as tall, wearing a floppy hat, and having a mustache.

Police officers testified that the defendant Dangerfield was apprehended inside a vacant building three blocks southwest of the store. Defendant was arrested when he was located on the roof of the same building. On the ground near where the defendant was arrested, police officers located a red suitcase containing a portion of the jewelry missing from the store. They also found a pistol and a green 1971 Chevrolet sedan parked nearby. The arrests took place fifteen to twenty minutes following the robbery.

At the time of his arrest, neither man wore a head covering. Defendant Green wore a sweater with a zipper; defendant Dangerfield wore a pullover sweater. Their descriptions matched those given by Mrs. Hogan in all other particulars.

At the police station, Polaroid photographs were taken of defendant and defendant Dangerfield. These photos were put with six photos taken from the files of the Guthrie Police Department and shown the following day to Mrs. Hogan. Although the police officer was unaware of it at the time, he had selected a photo of Dangerfield from the files and included it with the others. Mrs. Hogan identified the defendant from the photograph, and also identified the photograph of defendant Dangerfield taken the day of the arrest. She did not identify Dangerfield from the older photo. These photographs were introduced at the preliminary hearing and appear in the record on appeal.

Several witnesses testified to the fact that both defendant Green and defendant Dangerfield were in Oklahoma City on June 25, 1974, the evening before the robbery, at the time Mrs. Hogan testified she saw them in the store. Another witness, Robert Nephew, testified that he had observed the automobile found by the police at the time of the arrests parked in the location where it was found at 8:15 and at 8:45 on the morning in question. He also testified that the defendant Green walked into his barbershop at 9:50 a. m. and asked the time.

Defendant brings three assignments of error, the first of them dealing with the necessity of an evidentiary hearing, out of the presence of the jury, to determine whether in-court identification has been tainted by a pre-trial identification by line-up or photographs.

The question of the pre-trial identification by photographs of defendant first arose at the preliminary hearing. At that time, counsel for defendant questioned Mrs. Hogan about the size, number and arrangements of the photographs that she saw, about the description of the men given to police at the time of the robbery, about the time lapse between the robbery and the photographic identification, and specifically about how she was able to recognize the defendant as one of the men who was present at the robbery. She indicated that the identification was based on her recollection of the robbery itself and on the presence of the defendant in her store the evening before the robbery. (Preliminary Hearing TR 9–16) Defendant's counsel also questioned Officer Hasler of the Guthrie Police Department about the photographs he showed Mrs. Hogan. Officer Hasler was asked about each photograph and the description of the person therein, and the photographs were introduced into the record.

At the hearing on defendant's motion to suppress, counsel for defendant urged that the photographic identification was tainted because of the photos used, and that the identification of defendant at the preliminary hearing was accordingly invalid and should be excluded, along with in-court identification at trial. The assistant district attorney argued to the court that Mrs. Hogan saw the defendant in daylight, that she testified she based her identification on

her recollection of the robbery, that defendant wore no mask and was in her store for a considerable period of time.

Finally, at trial, defendant made a timely objection to the in-court identification by Mrs. Hogan. The court overruled the objection with exceptions. During Mrs. Hogan's testimony, the district attorney elicited from her, again, that her ability to identify the defendant was based on her memory of the robbery itself and of his presence the evening before. On cross examination, she testified that she was within twelve feet of the defendant at the time of the robbery. She also testified that there was plenty of light at the time of the robbery and that there were no obstructions in her line of sight.

This court in *Davis v. State,* Okl.Cr., 467 P.2d 521 (1970), in an opinion by Judge Bussey, has held:

We further observe that in the event the defendant raises a timely objection to the courtroom identification of the defendant for the reason that it is based on a pre-trial identification by photograph or line-up conducted in a manner contrary to the rules enunciated in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the trial court should conduct a hearing outside the presence of the jury and determine if the pre-trial identification procedure was conducted in accordance with the rule enunciated in *United States v. Wade, supra.* In the event that the pre-trial identification was not conducted in accordance with *Wade,* but it is established that the in-court identification can be made from an independent source, then the trial court should permit the State to present the in-court identification.

In *Wade,* the Supreme Court's tests for determining whether the identification was the result of a tainted pre-trial identification or the result of an independent means involved consideration of a number of factors, including: the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description; any identification prior to the lineup of another person; failure to identify the defendant on a prior occasion; the lapse of time between the alleged act and the pre-trial identification; and the relevant facts known about the pre-trial identification itself.

█ In this case, although an evidentiary hearing was not held at the time of the trial, the trial court had before it, and in fact considered, the factors necessary to make a *Wade* determination. Testimony had been presented to show the circumstances under which the robbery took place, the witness was thoroughly cross-examined, and full details of the pre-trial photographic identification, including the actual photos used, were in the record. While it is more desirable that a full evidentiary hearing be had either at the motion to suppress or at the trial, in this case the record supports the trial court's determination of admissibility, and that determination will not be disturbed.

In his second assignment of error, defendant states a mistrial should have been granted when the district attorney made reference, in closing statements, to the fact that certain evidence was undenied and uncontroverted, which defendant alleges were comments upon his failure to take the stand in his own defense, in violation of 22 O.S. § 701. The language complained of consists of the following:

" . . . Now, I'm going to ask you this question, is there one bit of contradictory evidence to the effect that there was a wilful or wrongful act of taking something? I submit to you that there is not. . . . I want to ask you this question. Has there been any evidence that controverts Mrs. Hogan's testimony about this assault being made upon her, about these threats being made upon her. . . . Has her testimony in that re-

spect been controverted in any way by any of these witnesses on behalf of the defendants? I submit to you that they have not, that her testimony has not. . . . You know she was the manager there, she had that, now, has that been controverted in any way?" (TR 294, 295)

"To go back to where I was, my question to you about one of the elements of this particular crime is this. Was there any testimony denying the fact that certain personal property was taken away out of and from the immediate presence of Velma Hogan, who was the manager of the store? Has that been denied by the evidence that's being presented? I submit to you that it hasn't. . . . And her testimony in that respect has not been denied in any way." (TR 296)

"I want you to think about this, where in any of the other testimony has that been denied?" (TR 297)

"His testimony [that of the witness Black who identified the jewelry taken in the robbery] is not controverted in any way, is not denied in any way. . . . How has any of his testimony [that of witness Ward] been denied in any way? No, it has not." (TR 300 "Now, again, nobody has denied Lt. Orndorff's testimony. It just hasn't been done." (TR 301)

This court has long held that 22 O.S. § 701 is a comprehensive statute and will not be enlarged nor extended to prevent a fair discussion of evidence. In *Denney v. State*, Okl.Cr., 346 P.2d 359, (1959), in the second paragraph of the Syllabus, the following language appears:

The Oklahoma statute prohibiting comment on failure of the defendant to testify is comprehensive in the extreme and the Court of Criminal Appeals will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witness in her behalf. This statute will not be deemed to go to

the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the State's evidence by proper proof other than that which might be given by the defendant personally.

See also *Tilford v. State,* Okl.Cr., 437 P.2d 261 (1967); *Woods v. State*, Okl.Cr., 440 P.2d 994 (1968); *Montgomery v. State,* Okl.Cr., 447 P.2d 469 (1968); *Lewis v. State,* Okl.Cr., 458 P.2d 309 (1969); and *Story v. State,* Okl.Cr., 478 P.2d 929 (1970).

The use of the word "uncontradicted" has been specifically discussed in the case of *Spears v. State,* 97 Okl.Cr. 249, 261 P.2d 464 (1953). We stated in the fourth paragraph of the Syllabus:

Where a defendant fails to offer any evidence, the prosecutor is not prevented from discussing the evidence against him and to state that such evidence is uncontradicted. Such argument would not be a violation of the statute forbidding comment on the fact the defendant did not testify.

Although defendant did not take the stand in this case, other witnesses did testify in his behalf. Their testimony contradicted only one portion of the State's case, that being the testimony of Mrs. Hogan that defendant was in the jewelry store the evening before the robbery. Defendant's primary defense was one of mistaken identity, but he introduced no evidence to show where he was at the time of the robbery, a fact which could have been shown without his taking the stand. While the district attorney did approach "thin ice," in the words of the trial court (TR 302) by his repetition, he did not directly comment on the defendant's failure to take the stand, and was pointing out to the jury what was actually in the evidence. We thus find that this assignment of error is without merit.

Finally, defendant urges that two of the three prior convictions should not have been introduced at the second stage

of the trial because he was under the age of eighteen at the time of the convictions and was not certified as an adult. However, defendant was eighteen at the time of the third conviction. Even had that third conviction been wrongfully enhanced by the prior convictions, there was no prejudicial effect at this trial, since defendant received the minimum sentence for this charge. Defendant's third assignment of error is also without merit.

For the reasons outlined herein, the judgment and sentence appealed from be and hereby is affirmed.

BUSSEY and BLISS, JJ., concur.