Larry Leon **WALKER**, a/k/a
Delbert Johnson, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–384.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1976.

Rehearing Denied Dec. 15, 1976.

Bob G. Carpenter and David W. Taylor, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Larry Leon Walker, a/k/a Delbert Johnson, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case No. CRF–74–4244, with the offense of Burglary in the First Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1431. The defendant was tried by a jury, convicted and sentenced to a term of fifty (50) years in State Penitentiary. From said judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness was Velma White who lived at 812 North Lee in Oklahoma City, Oklahoma. She testified that on the night of September 7, 1974, at approximately 10:00 p. m., while reclining on her bed and listening to her stereo, her kitchen light was suddenly switched off and two men entered her bedroom. One of the men held a hatchet to her throat and threatened to kill her, while the one she identified as the defendant searched her purse at the foot of her bed. This witness testified that although the only light on in the apartment at the time was her bathroom light, the interior of the apartment was well lighted by various nearby street lights. Furthermore, she had sufficient opportunity to identify the defendant when he looked up while searching her purse and threatened to kill her if he found no money. The intruders apparently entered and exited through a window in the living room at the front of the witness' apartment.

The State then called Francis Dowdy to the witness stand. She testified that she was Velma White's daughter. She lived in the apartment below her mother's apartment. On the night in question, she noticed that the screen to her mother's front window was partially removed. She looked into the apartment and noticed a pair of gloved hands holding a broom, switched her mother's kitchen light off. She then alerted her husband and other relatives that someone was in her mother's apartment. They proceeded to the rear of the apartment to see if the intruders were exiting by the back door. This witness then returned to the front and saw two men coming down the front stairs of her mother's apartment. This witness testified that the outside lighting was sufficient and she got a good look at the two men as they were coming down the stairs and again

had a good view of the defendant's face as he glanced at her while getting into a car. She took the car's license number and subsequently reported it to the police. After Mrs. Dowdy's testimony the state rested.

The defendant's first witness was Roy W. Johnson, who testified that the defendant was his nephew and that on the night in question, the defendant was with him from approximately 8:30 p. m. to 11:00 p. m. This witness stated that he distinctly remembered this day because he had wanted to get home early to entertain some guests but instead was persuaded by his nephew to help move some furniture.

The defendant's final witness was Linda Jenkins who testified that she was the defendant's common-law wife and was with the defendant on the night in question. She remembers the day in question because from approximately 9:30 p. m. to 11:00 p. m. the defendant was engaged in helping a friend move furniture in to their apartment.

■ The defendant's first assignment of error is that the prosecutor went outside the record to refer to a co-defendant's conviction during the closing argument. The defendant refers to the following exchange during closing argument:

"MR. INGMIRE: . . . Stop and logically look at how many people we had up here. He says they couldn't find them. We have been battling this thing out this long. Well, we have been as to the defendant, Price, and he's in the joint—

"MR. CARPENTER: Your honor, I object.

"THE COURT: The objection is sustained.

"MR. CARPENTER: your Honor, I ask for a mistrial for that purpose.

"THE COURT: The application of mistrial is denied but the jury is admonished to disregard the last statement of counsel." (Tr. 180)

While it was error for the prosecution to refer to co-defendant's conviction, which is a logical inference which can be drawn from the prosecution's statement, we feel that the Court's admonition to the jury to disregard the prosecutor's statement cured the error. *Kitchen v. State,* Okl.Cr., 513 P.2d 1300 (1973). Also see *Pryor v. State,* 34 Okl.Cr. 131, 245 P. 669 (1926). In *Kitchen v. State,* supra, this Court stated:

". . . The court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such a nature after considering the evidence that the error appears to have determined the verdict." (Citations omitted)

The prosecutor's statement does not appear to have been determinative of the verdict. The defendant bases his entire defense on the contention that he was not, and could not, have been present at the scene of the burglary. The conviction of Price is not inconsistent with such a defense. For the above reasons, we find the defendant's first assignment of error to be without merit.

■ The defendant's second assignment of error is that it was improper for the prosecutor to comment on the failure of the common-law wife and the other alibi witness to come forward prior to trial. In sole support of this contention, the defense cites *Buchanan v. State,* Okl.Cr., 523 P.2d 1134 (1974), which stands for the proposition that the prosecution cannot cross-examine or comment on pretrial silence of the accused. However, this Court, on numerous occasions, has distinguished the right of an accused to remain silent from the assertion of that right as applied to third persons. *Sands v. State,* Okl.Cr., 542 P.2d 209 (1975); *Bauhaus v. State,* Okl. Cr., 532 P.2d 434 (1975); *Glover v. State,* Okl.Cr., 531 P.2d 689 (1975). This Court reiterated its position in *Bauhaus v. State,* supra that:

". . . the constitutional guarantee against self-incrimination and right to

remain silent is a personal privilege which does not vicariously extend to the pretrial silence of third persons." (citations omitted)

For the above reasons this Court finds the defendant's second assignment of error to be without merit.

■ The defendant's third assignment of error is that it was improper for the prosecution to commit on the law as to alibi. The defendant refers to the statement made by the State at page 177 of the trial transcript, to wit:

"MR. INGMIRE: Mr. Carpenter tells you it is not their job to prove their alibi. If it's not, I don't know whose job it is."

However, the Court need not reach the question as to whether this comment constituted error since the defense failed properly to preserve the issue for review on appeal by timely objection. As this Court, in *McCall v. State,* Okl.Cr., 539 P.2d 418 (1975), stated:

". . . It is a well established rule that when an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with the request that the jury be instructed to disregard the improper statement . . . When this is not done, the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions, to the jury, correct such error. . . ."

We find the defendant's third assignment of error to be without merit.

■ The defendant's fourth and final assignment of error is that the prosecutor erred by stating his opinion as to guilt. At page 181 of the trial transcript, the prosecutor stated:

". . . By the same token, you, as triers of the fact must make a decision from that evidence. I think, using the logic that you all have as twelve, common sense people, you can reach no other conclusion which is all that you have to determine at this time is his guilt or innocence. He is guilty."

However, read in context with the preceding review of facts, it is apparent that the prosecutor is stating an opinion which he felt could reasonably be drawn as a logical inference from the evidence. This Court in *Igo v. State,* Okl.Cr., 267 P.2d 1082 (1954) states:

". . . a prosecuting attorney may state his opinion as to the defendant's guilt when he also states that his opinion is based on the evidence in the case, and where the evidence detailed reasonably tends to support such conclusions . . ."

Also see *White v. State,* Okl.Cr., 498 P.2d 421 (1972); *Hair v. State,* Okl.Cr., 532 P.2d 72 (1975).

Since it is sufficiently clear that the prosecutor, in summation, was merely pointing out a logical conclusion which could be reasonably inferred from the evidence introduced at trial, we find the defendant's final assignment of error to be without merit.

For the above and foregoing reasons, the judgment and sentence of the trial court is *AFFIRMED.*

BUSSEY, J., concurs.

BRETT, P. J., dissents.