[Crim. No. 359. Department Two.—June 6, 1898.]

THE PEOPLE, Respondent, v. GEORGE F. PLYLER, Appellant.

CRIMINAL LAW—JOINT PRELIMINARY EXAMINATION—SEPARATE INFORMATION—DISCRETION.—The fact that complaint was laid before a magistrate jointly charging defendant and others with an offense, and that the defendant and one of the others, as the result of a joint preliminary examination, were together held over for trial, does not preclude the filing of separate informations against them by the district attorney. It is within the discretion of the district attorney to inform against them either jointly (with the privilege to each of them of securing a separate trial), or separately, as he may determine.

ID.—EVIDENCE—COMPETENCY OF ANOTHER ACCUSED PERSON—PRIVILEGE.—The district attorney has the right to call to the witness stand another accused person, over whom was pending an information for the same offense, as being a competent witness, notwithstanding such person may avail himself of the privilege to decline to answer questions put to him, on the ground that his answers would tend to criminate him; and the calling of such accused person as a witness is not error, whatever may have been the resulting consequences in tending to prejudice defendant's case before the jury.

ID.—MAYHEM—NAME OF PERSON INJURED—VARIANCE.—Where the complaint charged the offense of mayhem by castration, committed upon a person named, and the information followed the complaint as to the name of the person injured, and at the preliminary examination he swore that that was his true name, and upon the trial testified that he had been known by that name for six years, but that it was not his true name, and that he had sworn falsely as to his name to shield his family from knowledge of the outrage of which he was the victim, there is no variance, but an identity in names and person; and the fact disclosed upon the trial that his true name was different did not constitute a variance, nor could it have at all injured the defendant.

ID.—INSTRUCTION—DISTRUST OF FALSE WITNESS—CONSTRUCTION OF CODE—MAXIM.—An instruction requested that: "If any witness examined before you has willfully sworn falsely as to any material matter, it is your duty to distrust his entire evidence," is an accurate exposition of the meaning of subdivision 3 of section 2061 of the Code of Civil Procedure, and should have been given without modification. The important element that the willfully false testimony must be upon a material matter, should be expressed in the instruction, though not expressed in the code.

ID.—CONTINUANCE—SICKNESS OF MATERIAL WITNESS—ABUSE OF DISCRETION. It is an abuse of discretion to refuse to grant a first continuance, upon motion of the defendant, based on his affidavit that his wife

was under subpoena, and was a material witness by whom he could prove of her own knowledge that defendant did not commit or participate in the alleged offense, and that he had no knowledge of it until after it had been perpetrated, and that she was the only person by whom he could prove any of these facts; that she was taken ill two or three days before the trial, and that he could not safely proceed in her absence, and that in a month she would be able to attend, accompanied by the certificate of two physicians in cor- roboration, and by the oath of defendant's counsel that she would give the testimony outlined by the defendant.

ID.—STATEMENT AS TO RECOVERY OF WITNESS—ERROR NOT CURED.—The error of the court in refusing to grant the continuance was not cured by reason of facts occurring at the trial, during which the district attorney stated that the wife of the defendant was no longer ill, and that she was about the streets, to which counsel for defense answered that she was too ill to be produced in court, and the judge expressed a willingness to issue an attachment for the wit- ness at the request of either party, neither of whom requested such attachment.

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

D. W. Burchard, W. A. McGuire, Howell C. Moore, and L. O'Neal, for Appellant.

W. F. Fitzgerald, Attorney General, Charles H. Jackson, Dep- uty Attorney General, and Carl E. Lindsay, District Attorney, for Respondent.

HENSHAW, J.—Defendant, convicted of mayhem, appeals from the judgment and from the order denying him a new trial.

1. Complaint was laid before a magistrate jointly charging defendant and others with the offense. The defendant and one Schoedde were together held over for trial. In due time the district attorney filed separate informations against them. This precluded a joint trial, and defendant insists that it was error. The argument advanced is that after the defendants had been jointly held for trial the district attorney had no power other than to file a joint information against them. The defendants were of right entitled to a joint trial, and each to the aid and

assistance of the other in his defense. This right was denied them by the course which the prosecuting officer adopted. It is further said that the law gives to defendants jointly charged the privilege of separate trials (Pen. Code, sec. 1098), but secures no such right to the people. It is true that the law, contemplating the embarrassments which may arise to defendants upon joint trials, and the desire which one may have to make a defense not acceptable to his codefendants, has humanely accorded the privilege of separate trials. But that is aside from the vital question. Is it mandatory upon the district attorney under the indicated circumstances to file a joint information? We are not advised of any law so declaring. It is within his discretion to inform against them either jointly or severally. The state may determine whether it will proceed against defendants accused of the commission of a single crime, either jointly (with the privilege to each of them of securing a separate trial) or separately, as was done in this instance. Unquestionably a grand jury may so return indictments, and the same course should be and is open to the district attorney.

2. Schoedde, over whom at the time of Plyler's trial was pending an information for the same offense, was called to the witness stand by the prosecution, and declined to answer questions put to him, upon the ground that his answers would tend to criminate him. The court sustained him in his position, and no evidence was elicited from him. It is urged that this was error, tending to prejudice defendant's case before the jury. Either the district attorney was of exceptionally sanguine temperament, or his hope of eliciting any valuable testimony from a witness situated as was Schoedde must have been extremely slight. Still, error cannot be predicated upon his futile effort, even though it was followed by all the injurious effects which defendant portrays. For Schoedde still was a competent witness for the prosecution, and he could refuse to testify only by the exercise of the privilege of which he availed himself. (*Ex parte Stice*, 70 Cal. 51.) It was not error, therefore, to call him to the witness stand, whatever may have been the resulting consequences to defendant.

3. The complaint charged the offense to have been committed upon the person of Charles Harris, and the information followed

the complaint. At the preliminary examination the complaining witness swore that his name was Charles Harris, and not Isaac Crossley. Upon the trial he testified that he had been known as Charles Harris in the city of Santa Cruz during all of the six years of his residence there, and had been known by no other name; but that his true name was Isaac Crossley. He explained that he swore falsely as to his name to shield his family and save them from knowledge of the outrage of which he was the victim, for the mayhem was castration. In the case of *People v. Christian*, 101 Cal. 471, the complaint charged and the defendant was held to answer for an assault committed upon George *Magin*. The information alleged an assault upon George *Massino*. The variance being urged, upon the ground that the defendant was tried for an offense upon which he had never been examined, the point was held well taken. But that case cannot avail defendant. This complaint and information alike charged a crime committed upon Charles Harris. Harris testified that such was the name by which he had always been known in the community. Here was no variance. There was an absolute identity in names and person, and the fact disclosed upon the trial for the first time that the complaining witness' true name was something different did not constitute a variance, and could not have injured defendant in the slightest degree.

4. Defendant proposed the following instruction: "If any witness examined before you has willfully sworn falsely as to any material matter, it is your duty to distrust his entire evidence." This instruction was modified by the court and thus given: "A witness who has willfully sworn falsely in one part of his testimony is to be distrusted in others." As given, the instruction closely approximates to the language of subdivision 3 of section 2061 of the Code of Civil Procedure. The subdivision is but a brief paraphrase of the terse maxim *Falsus in uno, falsus in omnibus*. The code provision, like the Latin maxim, is not a complete exposition of the law. Well understood by jurists, it would be misleading to the nonprofessional mind. It requires construction and amplification. This it has received. (*People v. Sprague*, 53 Cal. 494; *People v. Soto*, 59 Cal. 368.) The proposed instruction is an accurate exposition of its meaning, and should have been given. The charge delivered by the court

omits the very important element that the willful false testimony must be upon a material matter.

5. This disposes of all of appellant's objections necessary to be considered in contemplation of a new trial, which must be ordered for the following reason: Defendant pleaded upon July 27th. His trial was set to commence upon Monday, about three weeks later. Upon the morning of that day his counsel moved the court for a continuance, based upon an affidavit of defendant that his wife was under subpoena and was a material witness for the defense; that by her he expected to prove, and that she would testify of her own knowledge, that defendant did not commit, participate, aid, or abet in the commission of the alleged offense, and that he had no knowledge of the commission of it, or of any offense upon the person of Harris, until after the crime had been perpetrated; further, that she was the only witness by whom he could prove any of these facts; that she was taken sick of a miscarriage two or three days before the date set for trial, and was at the time in such a precarious condition of health as made it impossible for her to attend the trial; that he could not safely proceed in her absence; that by a month from that date she would have recovered her health and be able to appear and testify. This affidavit was accompanied by the certificate of two physicians to the effect that they had examined the witness upon the Saturday preceding the day set for trial and found her much prostrated, suffering from the indicated sickness and completely incapacitated from making any exertion. Her attendance at court would be dangerous to her life. It was offered to procure affidavits covering the ground of the certificates, but no objection was urged to the form of their presentation. In addition to this, one of defendant's counsel testified in corroboration of the matters contained in the affidavit. This was the first continuance asked by defendant. The time, a month, was not unreasonable. There was no counter-showing, yet the motion was denied. The reason for the refusal is not assigned, and none can be perceived. If the defendant could offer such evidence, and it was credited, it meant his complete vindication. There is no doubt, then, of its materiality. The court could not with propriety have discredited the affidavit. It was supported by the oath of defendant's counsel, who swore that to his own knowledge defendant's

wife would give the testimony outlined. That the court abused its discretion in refusing to grant the motion is a conclusion which cannot be escaped. For far less has this court ordered new trials. (*People v. Dodge,* 28 Cal. 445; *People v. McCrory,* 41 Cal. 458; *People v. Brown,* 46 Cal. 103.)

During the trial of the case the district attorney made the following statement to the court: "I have received information, which I believe to be authentic, that the witness (Mrs. Plyler) is no longer ill, if she ever was, and is up and about the streets of San Jose, and that if the defense desire her attendance they have time to procure her now." Counsel for defense answered that, though she had been subpoenaed by the defense, their information was that she was still too ill to be produced in court. The judge expressed his willingness to issue an attachment for the witness at demand of either side, and, neither party requesting it, there the matter rested.

This could not cure the error. If the district attorney was justified in his belief that the witness was malingering, or had recovered from her illness, he should have caused her to be produced in court, and thus have saved the case from the injury worked by the court's refusal to grant the continuance. The defense, holding the conviction that the witness was still very sick, properly declined to ask for an attachment.

The judgment and order are reversed, and the cause remanded for a new trial.

McFarland, J., and Temple, J., concurred.