James Thomas NEAL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17854.

Court of Criminal Appeals of Oklahoma.

Feb. 13, 1973.

As Amended Feb. 15, 1973.

Rehearing Denied March 5, 1973.

Max Cook, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

BUSSEY, Judge:

Appellant James T. Neal was charged conjointly with John David Freed and Sanford Schor for the offense of Illegal Sale of Heroin to one Carol Kay Mc-Connell on the 13th day of May, 1971, in the District Court of Comanche County, Case No. CRF–71–271, in violation of 63 O.S. § 402. The case was called for trial on the 21st day of September, 1971, but prior thereto, on September 20, 1971, Sanford Schor filed a Motion for Continuance

which was granted by the court. John David Freed jumped bond and on the 21st day of September, 1971, Appellant Neal, hereinafter referred to as defendant, announced ready for trial, the jury was impaneled, and the State proceeded to offer the testimony of Carol Kay McConnell when the following occurred:

"THE COURT: I'm not actually sure if this is hearsay or not in this case. They are charged conjointly here.

MR. COOK: They are not being tried conjointly, though, Your Honor.

THE COURT: I assume the other Defendant is not present for trial, the other two Defendants, but I'm not sure that that fact in itself makes it hearsay.

MR. COOK: It does not make us in a position to be able to cross examine these other witnesses, Your Honor.

MR. CALLICOTT: He was present here this morning, Mr. Schor was."

Thereafter, the trial proceeded without the defendant ever objecting to being tried without his co-defendants, and he was sentenced to serve eighteen (18) months in the state penitentiary.

The defendant contends that it was error for him to be forced to trial without his co-defendants and without a severance having been granted, but cites no authority in support thereof. Counsel for defendant apparently has overlooked Wilkins v. State, 80 Okl.Cr. 142, 157 P.2d 764, where an almost identical situation existed. In *Wilkins, supra,* the defendant therein had been charged jointly with two others with the crime of Larceny of Livestock. The case was called for trial and neither co-defendant was present. The defendant and the State announced ready for trial and the jury was impaneled and sworn. Opening statements were presented and reserved. Counsel for the defendant made no objection regarding the absence of the co-defendants, however, at that stage of the proceedings, after moving for a directed verdict, an oral objection was made to the taking of evidence for the reason that the

co-defendants were not in the court room and were not present at the time the jury was impaneled. After a brief discussion the State moved for a severance which was granted and the trial proceeded. The defendant had made no attempt to object to his co-defendants' absence during the impaneling of the jury and the Court concluded that he undoubtedly knew that they had never had a preliminary hearing and could, therefore, not be tried at that time. In Wilkins v. State, *supra,* we stated:

"We think the proper rule would be that the request for a severance should be made before the exercising of the right of challenge to the jurors, *but we are also of the opinion that the defendant by his conduct has waived any right he may have had to a joint trial with his codefendants . . . .*" [Emphasis added]

Citing a California case, this Court also stated in *Wilkins, supra,* as follows:

" 'In the first place, it must be admitted that the state could have accomplished the separate trial of these defendants by informing against them separately; and neither defendant could have said nay, although jointly complained against, tried, and bound over, by the examining magistrate. People v. Plyler, 121 Cal. 160, 53 P. 553. If that be true, what would be the reason for a construction that the state may not directly do what it could have accomplished by indirection?

" '*An accused jointly indicted or informed against in a felony case has no absolute right to a joint trial.* He cannot compel his co-defendants to be tried with him; but each of them, by demanding separate trials, may thereby compel him to be separately tried. One of two joint defendants may plead guilty, thereby compelling the other to be tried alone.

" 'Will this court say that just because two men are jointly accused that they, or either of them, may compel the state to try both at the same time, or else not try either? Suppose one of them should never be arrested, or else make his es-

cape after his arrest, then what remedy would the state have? Proceed against the other? No; because you have elected to prosecute him with the other, and you are bound by such election. Therefore he escapes punishment altogether, or the state must wait until the other is apprehended. What utter nonsense such a theory really is.'" [Emphasis added]

 In light of Wilkins v. State, *supra*, we are of the opinion, and therefore hold, that when a defendant, jointly charged with others, appears for trial, announces ready, and the jury is impaneled, he has waived any right to object to being tried separately. Particularly is this true when one of the defendants has "jumped bond" and the other has been granted a continuance prior to trial.

 Defendant further contends that the evidence of the State was wholly insufficient to support the verdict of the jury in that the evidence failed to establish that the defendant "wilfully" sold a narcotic drug. In support of this contention defendant argues:

"The testimony of the State in this case is completely silent as to anything tending to show that the Defendant in this case had knowledge of anything that he was supposed to have allegedly delivered, in the way of a drug or drugs, to the State's witness (C–M 17) to the effect that the Defendant herein handed her a silver packet and she may have stated something to the effect that he said it was heroin, but her statement was very inconclusive and the District Attorney did not go into it in any manner whatsoever thereafter."

The record discloses that after having their vehicle and persons searched, Carol Kay McConnell and Vickie Harrell were followed to the residence located at 1616 North 17th, Lawton, Oklahoma, where they entered the premises. (Prior thereto, Carol Kay McConnell was given a twenty dollar and a five dollar bill by Deputy Sheriff Larry LaFrance). The house remained under surveillance and nothing occurred except that a man came out on the porch and re-entered shortly thereafter, and a person arrived at the residence on a motorcycle and entered the premises. The testimony of Carol Kay McConnell and Vickie Harrell was that upon arriving at the premises Carol attempted to purchase narcotics from John David Freed, but that he had none and that he talked on the telephone to Sanford Schor, as did Carol, and after these conversations the defendant Neal arrived on a motorcycle, entered the premises where he sold narcotics to Carol Kay McConnell for $25.00. The pertinent testimony on behalf of the State relating to the sale appears in the record as follows, after defendant Neal had arrived at the premises on a motorcycle:

"Q. And did you hang up the phone at that time?

A. Yes, I did.

Q. And what did you do after you hung up the phone?

A. Well, he was at the door by then, and so he walked in and—

Q. Did you have a conversation with him at this time?

A. Oh, not much of one at that—you know, right at that moment, but he handed me a silver packet and said that—you know, it was heroin."

(Tr. 17) And further, at page 63 of the transcript Carol McConnell testified as follows:

"Q. This morning you testified in regard to your purchase of a substance from the Defendant Neal. Did you have a conversation with him about this when he came in the door?

A. Yes, I did.

Q. Would you relate to the court and jury what his conversation was?

A. Well, he was telling me how good his heroin was; he said it was ninety per cent heroin.

Q. And did he say anything else about the heroin?

A. That I could get all—that he could get me all I wanted."

Thereafter, Carol McConnell and Vickie Harrell left the premises and were kept under surveillance until their persons and vehicle were searched. The $25.00' was not on their person, but the silver packet containing what was later analyzed as a white powdery substance containing 58% heroin, was turned over to Agent Lovell.

Vickie Harrell testified that she had witnessed the sale by defendant Neal to Carol Kay McConnell.

The defendant took the stand in his own behalf and under direct examination admitted that he was on the premises on the evening of May 13, 1971, and that the only persons present were Vickie Harrell, Carol Kay McConnell and John David Freed. He testified that it was Freed who sold the silver packet and that he had never sold narcotics on any occasion. This witness further testified that he had been present on the premises on a previous occasion where a drug transaction took place between Freed and Carol Kay McConnell and that subsequent to the night in question in a different location, in the presence of Freed, Vickie Harrell and Carol Kay McConnell had attempted to purchase drugs from them, but that no sale was made. The defendant further testified, under direct examination, that as a member of the armed services, stationed in Thailand, he had used marijuana and further on direct examination, appearing in the record at page 81, the following questions were asked and answers given by the defendant:

"BY MR. COOK:

Q. Have you ever been arrested for anything in your life?

A. Yes, sir, I was arrested but the charges have been dropped.

Q. How old were you at that time?

A. Well, I was arrested once for a curfew violation when I was sixteen, and I was arrested on a joint charge of tire theft which was also dropped when I was nineteen.

Q. Have you ever been in any trouble of any kind with the police or the military authorities in your life?

A. No, sir."

The defendant called Mr. Harold Boydston, who testified as to defendant's reputation at his place of employment.

■ We believe it is abundently clear from the evidence set forth, that although conflicting, the evidence was ample to support the verdict of the jury. We have repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

■ As a part of the same argument defendant contends that since marked money was used in the transaction, the arrest should have been made immediately after the sale. He cites no authority in support of this proposition. There is no requirement that an arrest be made immediately upon the completion of a sale. Indeed, where, as in the instant case, McConnell and Harrell were undercover agents, investigating not only this, but numerous other cases, it would have "blown their cover" and rendered them useless in further investigations to have made the arrest immediately after the sale.

■ The defendant argues that:

"[T]he writer of this opinion is well aware of the Court's rule about going outside of the record to present an argument in an appeal, but I think, in view of the circumstances and conditions that took place in the trial of this case, that it should be called to the Court's atten-

tion that Sanford Schor was later tried for this same offense on the 16th day of November, 1971, and was acquitted. A copy of the verdict and acquittal in that case is attached hereto marked Exhibit '1' and made a part hereof. In this connection, if the jury's finding in the trial of the Sanford Schor case, which occurred later, as stated above herein, was proper and Sanford Schor had no part in the sale of this drug as alleged in the Complaint and Information, then it would have been impossible for the Defendant in this instance to be an accomplice of a man who was not guilty; and certainly, if Sanford Schor was not guilty, as the jury found him later to be, then there was no way that the Defendant in this action could have perpetrated the crime that he was accused of conjointly with Sanford Schor."

Counsel's attention is called to 22 O.S. § 432, which provides:

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal."

Counsel's attention is further called to 22 O.S. § 433, which provides:

"An accessory to the commission of a felony may be prosecuted, tried and punished, though the principal felon be neither prosecuted nor tried, and though the principal may have been acquitted."

The defendant further complains that during the course of the trial he was prejudiced by the admission into evidence of hearsay testimony. He cites no specific instances, but calls the Court's attention to the record. We have carefully examined every objection and ruling of the court on the question of hearsay and can find no error in the ruling of the trial court. We are of the opinion that this assignment of error is without merit.

This leads us to a consideration of defendant's contention that the Assistant District Attorney committed fundamental and reversible error in the closing argument when the following statements were made:

"I am surprised of Mr. Cook accusing me of rehearsing my witnesses. He's known around our office as 'Rehearsal Cook', so I don't think that it makes any difference." (Tr. 91),

and

"He has been charged twice, once with grand larceny, once for something else, I've forgotten what it was, and these were dropped. He has been at least charged with these things. What else has he done? Who knows?" (Tr. 93).

Counsel acknowledges that no objection was made to these remarks, nor was the court requested to admonish the jury to disregard them with an exception taken to the ruling of the court. It is a well established rule that when an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done, the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error. Notwithstanding this rule, we are of the opinion that the remarks made by the prosecutor in the first instance were provoked and invited by Mr.

Cook where, during closing argument, he stated:

"The testimony was—*I'm not going to accuse the District Attorney of writing out their testimony for them because he's not that kind of man and he wouldn't do it, but it had been rehearsed so fine* that if you will remember, Vickie testified that he took the object with his right hand and took the money with his left hand, but they didn't rehearse all the way because two of them said that the girls were in there for an hour and this guy Wyatt said they was [sic] in there for fifteen to twenty minutes." [Emphasis added]

The effect of defense counsel's statement to the jury left the inference that the District Attorney had rehearsed the witnesses notwithstanding the language negating conduct of this kind on the part of the prosecutor. The statements, when viewed in context, more than not, invited the remark of the prosecutor now alleged as error. In Tilford v. State, Okl.Cr., 437 P.2d 261 (1968), this Court stated:

"Generally, remarks of the prosecuting attorney, including such as might or would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or are in reply to or retaliation for his acts or statements."

 The latter remarks complained of relative to the defendant having been charged twice before, were a fair comment on the evidence introduced on direct testimony by counsel for defense.

For all of the reasons above set forth, we are of the opinion that the defendant had a fair trial, free of any error which would justify modification or reversal, and that the punishment imposed was well within the range provided by law.

The judgment and sentence appealed from is accordingly affirmed.

BLISS, P. J., and BRETT, J., concur.