Ronnie James CHANCE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–766.

Court of Criminal Appeals of Oklahoma.

June 17, 1975.

Rehearing Denied Sept. 5, 1975.

Stephen Jones, Enid, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., James D. Bednar, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Ronnie James Chance, hereinafter referred to as defendant, was

charged, tried and convicted in the District Court, Woods County, Case No. CRF-73-58, for the offense of Unlawful Delivery of Marijuana, in violation of 63 O.S.1971, § 2-401(B-2). He was convicted jointly with co-defendant Gary Lee Taylor. His punishment was fixed at a term of two (2) years' imprisonment and a fine of Two Hundred and Fifty ($250.00) dollars. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Ted S. Jones testified that he was on duty as Chief of Police of Waynoka, Oklahoma, on October 9, 1973. On this date Herman Marion contacted him by telephone and asked him to come to Park's Hardware Store, in Waynoka, and bring a marked twenty dollar bill. Chief Jones went to Park's Hardware Store and talked to Herman Marion, had him empty his pockets, conducted a pat down search of Marion, and gave him a marked twenty dollar bill to be used in making a purchase of marijuana. He identified State's Exhibit No. 1 as the twenty dollar bill that he had marked in one corner with the red letters NOKA. Marion then left Park's on his motorcycle and Chief Jones followed him to one Opal Treece's house. At this point Chief Jones returned to the police station and waited. While at the police station he called the District Attorney's office in Alva and asked them to stand by because they might be needed. Later, Marion came back to the police station and gave Chief Jones what he called a lid of marijuana in a cellophane container or baggie. The Chief got in his automobile and began looking for defendant Taylor's automobile bearing the license number WW-4411. He found the automobile and followed it, but lost it around the school house at Waynoka. He called Woodward and told the officials there to watch for the automobile and to stop and hold it. He testified that the car was stopped approximately a mile east of Woodward and that he went there with Arlo Darr, County Sheriff, and Clay Wise, the Assistant District Attorney. When they arrived at the location they encountered the Undersheriff of Woodward, Mr. Rutledge, Chief of Police Don Sunderland, Chief of Police of Mooreland, Ron Stevens, Ronnie Chance and Gary Taylor. At this point he identified both defendants. Upon arriving at the location where the defendant's automobile was stopped, Calvin Rutledge handed him a twenty dollar bill which he identified as the one he had given to Herman Marion.

On cross-examination, Chief Jones testified that he had known Herman Marion for approximately three months prior to October 9, 1973. Marion had never worked for him as a volunteer, informant, or purchaser of drugs before this time. He had no information as to whether Marion was a reliable informant or that Marion was a convicted felon. Chief Jones stated that he had no personal knowledge of any purchase of marijuana nor was he present when the sale allegedly occurred. All he knew of the alleged transaction was what he was told by Marion.

The State's second witness, Herman Lee Marion, testified that in 1962 he received a one year suspended sentence on a bogus check charge in Grady County; in 1971 he was sentenced to five years in the State penitentiary for forgery and bogus check charges in Canadian County; he was arrested in Garfield County in January, 1974, for embezzlement and the charge was reduced to a misdemeanor and he paid a fine; and, at the time of this trial, he had a bogus check charge pending against him in Woods County. He stated that he had made no deal with the District Attorney in relation to the pending bogus check charge and his testimony in the case at bar. Sometime during the morning of October 9, 1973, he encountered the defendants and one Bill Brown coming around the curve which is in the highway that approaches Waynoka from the north. He had known Brown for approximately a month prior to this date. He stopped the three men and asked them if they would like to work for him. They declined the offer. Arrange-

ments were then made for him to purchase some marijuana from the defendants. At this point Marion left the three men and went to Park's Hardware Store and called Chief Jones. Chief Jones came to the hardware store, searched him, and gave him the marked twenty dollar bill. He identified State's Exhibit No. 1 as the twenty dollar bill he received from Chief Jones. Upon leaving Park's he went to Opal Treece's house, met the defendants, and drove east of Waynoka with them in defendant Taylor's automobile. The purpose for going to the country east of Waynoka was to smoke a "joint" to determine if what the defendants had was marijuana. Marion related that he had smoked marijuana before and that the "joint" they smoked was, in his opinion, marijuana. He asked both defendants if they would sell him a lid and a half for twenty dollars. He identified State's Exhibit No. 2 as the bag of marijuana that the defendants sold to him. After returning to Waynoka, he went to the police station and turned the marijuana over to Chief Jones. At this same time he gave Chief Jones a description of the defendant's automobile, the license number and the description of the two defendants.

On cross-examination, he testified that at the time of the trial he was on parole from the five year sentence which he had received in Canadian County. The pending bogus check charge in Woods County was filed in September of 1973, prior to his purchasing the marijuana from the defendants in October of 1973. He stated that he could not remember if defendant Chance had told him whether it was his marijuana which was sold, but that he could remember the two defendants discussing between themselves the sale of the marijuana. However, he did not hear what was actually said in that conversation.

While testifying as to part of his background, Marion stated that he had attended a school for electricians which he assumed to be connected with the University of Tennessee in Knoxville. At this point he was asked to read defendants' Exhibit No. 1 which was a letter from the University of Tennessee in Knoxville. The registrar of the University wrote that they had no record of Marion ever attending any of their programs. Marion then stated that he did nothing while he was in Tennessee.

Marion could not remember who opened the conversation concerning the sale of marijuana but that Bill Brown had arranged for all of them to meet at Opal Treece's house to consummate the sale. Further, he could not remember to which of the defendants he gave the twenty dollars. Both of the defendants gave him the marijuana when they were in the country where they had stopped to smoke the "joint." He stated that both defendants got out of the automobile while he remained in the back seat, opened the trunk, and returned with the marijuana.

At this point in the trial, Chief Ted Jones was recalled to the witness stand. He identified State's Exhibit No. 2 as the baggie which was given to him by Marion on October 9, 1973. It was kept in a safe in the Waynoka City Hall until he turned it over to Arlo Darr, the Sheriff of Woods County. He further testified that when he called the Woodward authorities to watch for and stop the defendants, he also told them that there was supposed to be more marijuana still in the automobile along with the marked twenty dollar bill.

The State's third witness, Don D. Sunderland, testified that he was on duty as the Chief of Police of Woodward, Oklahoma, on October 9, 1973. On that date he and Calvin Rutledge, the Undersheriff of Woodward County, had occasion to encounter both defendants at a point approximately three-quarters of a mile outside of Woodward on Highway 15. He and Rutledge were parked in their vehicle along the side of the road. Ron Stevens, the Chief of Police of Mooreland, Oklahoma, was following the defendants who were traveling in a 1962 Chevrolet, license number WW–4411. Stevens stopped the de-

fendants a short distance from Sunderland and Rutledge. Pursuant to information they had received from Chief Jones, Rutledge arrested both subjects and advised them of their rights. The defendants were taken out of the vehicle and searched by Rutledge. Sunderland searched the vehicle and retrieved a baggie of what appeared to be marijuana which was sticking out from beneath the front seat. He identified State's Exhibit No. 3 as the baggie he had found. Rutledge found State's Exhibit No. 1, the twenty dollar bill, on the person of defendant Taylor. They then held the defendants and contraband until the Sheriff of Alva arrived, at which time they were turned over to him.

On cross-examination, he testified that he had no warrant to arrest or search the defendants or their automobile, but rather stopped them pursuant to information that a felony had been committed.

The State's fourth witness, Calvin Rutledge, testified that on October 9, 1973, he was on duty as the Undersheriff of Woodward County. He identified the defendants as the two men he arrested on the date in question. He arrested them after receiving a call by way of public service from Chief Jones. He identified State's Exhibit No. 1 as the twenty dollar bill he recovered upon searching defendant Taylor and State's Exhibit No. 3 as the baggie recovered from defendant's automobile by Don Sunderland.

On cross-examination, he testified that Ron Stevens actually made the stop of defendant's automobile.

The State's fifth witness, Arlo Darr, testified that on October 9, 1973, he was on duty as the Sheriff of Woods County. He stated that somewhere between 2:00 p. m. and 3:00 p. m., on the date in question, he arrived with Chief Jones at the scene of the arrest and received State's Exhibit No. 3 from Calvin Rutledge. State's Exhibits Nos. 1 and 2 were given to him by Chief Jones. After returning to Alva, he mailed the two baggies of green leafy substance to the State chemist and retained possession

of the marked twenty dollar bill until the day of trial.

The State's final witness, Don Flynt, testified that he was a forensic chemist for the Oklahoma State Bureau of Investigation. He identified State's Exhibit No. 4 as the mailing container he received which held State's Exhibits Nos. 2 and 3. Upon receiving the exhibits he placed them in the evidence locker until they were examined, and upon completion of the testing he replaced them in said locker until the time of trial. After identifying the testing procedures used on the exhibits, he stated the results confirmed that each exhibit was marijuana. At this point the State rested its case.

The defendant's first witness, Bill Brown, testified that he was a cousin of defendant Taylor and had met defendant Chance a couple of times. He stated that on the morning of October 9, 1973, he saw Herman Marion in downtown Waynoka at which time Marion asked him if he would go to work for him. The defendants were not present at this meeting. He testified that he did not see Marion on the highway outside Waynoka. He did see Marion later that day at his mother-in-law's, Opal Treece, house. The defendants were present at that time. He related that he had no conversation with Marion in regard to marijuana except that while at Opal Treece's house Marion asked him if he wanted to go smoke some with him. He told him that he could not. He did not hear any conversation that day concerning the sale of any marijuana.

On cross-examination he testified that he left Marion and the defendants at Opal Treece's house and did not know what took place after he left.

Ronnie James Chance took the stand on his own behalf. On October 9, 1973, he went to Waynoka with Gary Taylor to visit some girls they knew. They met Bill Brown, he got in their automobile, and they proceeded to Opal Treece's house. On the way Herman Marion rode up on his motorcycle, stopped them and, thereaf-

ter, Brown got out to talk to him. He did not hear the conversation. After this they went to Opal Treece's house and had been there about 10 minutes when Marion rode up on his motorcycle. Brown introduced Marion to them and then left. Marion then asked them about some marijuana. Defendant Chance related that he did not have any, nor had he seen any. Marion then handed defendant Taylor a bag and wanted to drive to the country and smoke a "joint." Defendant Chance drove the automobile to the country and they smoked a "joint." He testified that he did not hear anyone offer to sell Marion any marijuana. He stated that he did not sell any marijuana. He stated that he did not see any money in the car while he was with Taylor and Marion and that Marion did not give him any money. Finally, he denied having possession of, or selling any marijuana on the day in question.

On cross-examination he testified that he had never seen State's Exhibit No. 3 before. It was apparent to him that the marijuana they smoked belonged to Marion. Taylor had never shown any marijuana to him. He stated that while they were stopped in the country and he was out of the automobile using the restroom, Taylor did get out of the automobile and open the trunk, but he did not know why. This concluded the defendant's case.

The defendant raises only two assignments of error on this appeal, therefore, this opinion will be limited to a discussion of those two assignments only.

 The defendant's first assignment of error alleges the trial court erred in overruling the defendant's motion for severance. It is well settled in this jurisdiction that, absent a showing of prejudice, the trial court's failure to grant a motion for severance will not be considered grounds for reversal of a conviction. See, *Winningham v. State*, Okl.Cr., 488 P.2d 609 (1971). Accordingly, it is necessary to examine the record to determine if defendant has met this requirement. The defendant's motion for severance found at page 7

of the original court records contains the following:

> "COMES NOW said defendant, Ronnie James Chance, and shows the court that he is jointly charged as a defendant in the above styled and numbered cause with Gary Lee Taylor, and that this defendant should be granted a severance herein.
>
> "WHEREFORE, the defendant, Ronnie James Chance, moves the Court to grant him a severance in the above styled and numbered cause."

And further, defendant renewed his motion at the outset of the trial as follows (Tr. 1–2):

> "MR. WOLFE: Your Honor, at this time comes now the defendant, Ronnie James Chance, and renews his Motion previously filed herein and requests the court to Grant him a severance in this trial from the co-defendant, Gary Lee Taylor, on the ground that the trial with Mr. Taylor would result in prejudicial testimony being introduced against him which would otherwise be excluded."

From a thorough reading of the above, it becomes apparent that the defendant did not meet the burden of showing how he would be prejudiced by joinder with co-defendant Taylor. This Court has held in *Jones v. State*, Okl.Cr., 527 P.2d 169 (1974):

> "It is this Court's opinion that it must always be the rule that severance must be requested by defense counsel with counsel apprising the trial court of circumstances which may develop which might prejudice other co-defendants. Without such information a judge cannot be presumed to know or can it be considered to appear that prejudice will result from the joinder."

Furthermore, this Court has held that a severance is not a matter of right on the part of defendant, but rests entirely in the judgment of the trial court and a denial of a motion for severance will not be disturbed on appeal unless there is a clear

showing of an abuse of discretion. See, *Wright v. State,* Okl.Cr., 505 P.2d 507 (1973).

█ Therefore, due to defendant's failure to apprise the trial court of circumstances which would be prejudicial to him as a result of joinder with co-defendant Taylor, we find that the trial court cannot be considered to have abused its discretion in not granting the motion for severance.

The defendant's final assignment of error alleges the trial court erred in refusing to declare a mistrial when, during closing argument, the prosecutor made the following comment alleged to be prejudicial to defendant. (Tr. 235–236)

"MR. WISE: Two to ten, I am sorry, two to ten with, I think some fine of up to five thousand dollars, and the State would respectfully ask that you find both defendants guilty as acting conjointly and together, even one gets up there and doesn't know anything, I don't believe in just, in other words, you are the judges of the facts, so I believe I wouldn't consider what he had to say, and the other guy didn't get up there."

█ We observe that the defendant testified in his own behalf and the comments complained of constituted a comment on the co-defendant's failure to take the stand and testify. Counsel for the co-defendant objected and the jury was admonished not to consider said comment. The court, at that time, observed that the remark was prejudicial to co-defendant Taylor, and that if the defendants were convicted, he would grant them a new trial. This gratuitous comment by the court was not binding on the court and when he overruled defendant's motion for new trial he obviously considered the comment as being non-prejudicial to the rights of the defendants in view of the fact that counsel for the defendant had not objected to the comment, nor did he move for a mistrial based upon said comment nor request the trial court to instruct the jury to disregard the improper comment. When the court instructed the jury to disregard the comment of the prosecutor relating to the failure of the co-defendant to testify in his own behalf, the error, if any, as to the defendant was cured.

Moreover, we follow the rule enunciated in *Neal v. State,* Okl.Cr., 506 P.2d 936 (1973), wherein we stated:

"It is a well established rule that when an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done, the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error. . . . ."

█ We further observe that counsel for defendant has cited no authority in support of this assignment of error. Under these circumstances this Court has consistently held that it is necessary for counsel for defendant not only to assert error, but to support his contention by both argument and citation of authorities. Where this is not done, and in the absence of fundamental error, this Court will not research the books for support of the mere assertion that the trial court has erred. See, *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969).

In light of the above and after careful review of the record, we fail to see how this defendant was prejudiced by the statement in question. Therefore, finding no fundamental error we find this assignment to be without merit.

Finding no error sufficient to warrant modification or reversal it is our opinion that the judgment and sentence appealed from should be, and the same hereby is, affirmed.

BRETT, P. J., dissents.

BLISS, J., concurs.

BRETT, Presiding Judge (dissenting):
Because of the prejudicial remarks of the prosecutor I feel compelled to dissent to this decision.